# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 302 | **DATE** | 2/25/2003 |
| **CASE TITLE** | Mopex, Inc., et al vs. Chicago Stock Exchange, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at_____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The court grants in part and denies in part defendants' motion to dismiss [168-1] and denies defendants' motion to bifurcate and stay the remaining claims [168-2]. The Court: (1) grants defendants' motion to dismiss Counts II, III, and IV; (2) denies BGI's motion to dismiss Count V; and (3) denies defendants' motion to dismiss Count VI.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 27 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 208 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 FEB 26 AM 8:35 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/Time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
FEB 2 7 2003

| | | |
|---|---|---|
| MOPEX, INC., and<br>REALTIMEMUTUALFUNDS.COM, Co.,<br><br>Plaintiffs,<br><br>v.<br><br>CHICAGO STOCK EXCHANGE, INC.;<br>STATE STREET BANK & TRUST CO.;<br>SSgA FUNDS MANAGEMENT, INC.;<br>STATE STREET GLOBAL MARKETS, LLC;<br>BARCLAYS GLOBAL INVESTORS, N.A.;<br>BARCLAYS GLOBAL FUND ADVISORS;<br>SEI INVESTMENTS DISTRIBUTION CO.;<br>PFPC, INC.; JP MORGAN CHASE BANK;<br>ALPS MUTUAL FUNDS DISTRIBUTORS;<br>INVESTORS BANK & TRUST CO.;<br>MERRILL LYNCH, PIERCE, FENNER &<br>SMITH INC.; DEMPSEY & COMPANY;<br>SYDAN, LP; ROCK ISLAND SECURITIES,<br>INC.; SUSQUEHANNA PARTNERS, G.P.;<br>NATIONAL SECURITIES CLEARING<br>CORP.; iSHARES INC.; THE iSHARES<br>TRUST; THE streetSHARES SERIES TRUST;<br>and THE SELECT SECTOR SPDR TRUST,<br>all corporations,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 01 C 302<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mopex, Inc. ("Mopex") and Realtimemutualfunds.com, Inc. ("RealTimeFunds") brought suit against multiple defendants (collectively "defendants") for patent infringement, as well as Illinois state law claims of civil conspiracy and tortious interference with business expectancy. Defendants have moved to dismiss the state law claims pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6), or in the alternative, to bifurcate and



stay these claims pending the outcome of the patent infringement proceedings. For the following reasons, the motion is granted in part and denied in part. Defendants' motion to dismiss is granted with regard to the conspiracy to commit patent infringement claims. The motion is denied with regard to the tortious interference claim and the civil conspiracy to commit tortious interference claim. The motion to bifurcate and stay these surviving claims is also denied.

## FACTS

The patent at issue is U.S. Patent No. 6,088,685 ("the '685 patent"), which relates to an "Open End Mutual Fund Securitization Process." This method allows for trading of open end mutual funds and linked derivative securities on or off of the floor of a national securities exchange. Mopex is the assignee of the '685 patent, which is licensed exclusively to RealTimeFunds. These two corporations are comprised of two individuals, Kenneth Kiron and Kevin Bander, who are also the inventors of record on the '685 patent.

Plaintiffs' second amended complaint alleges that in or around September 2000, Mopex began negotiating business relationships and offering license agreements for the '685 patent to various third parties such as the American Stock Exchange, the Pacific Stock Exchange, the Chicago Stock Exchange, Chase Manhattan Bank, and the Bank of New York, among others. Mopex alleges that these parties expressed noticeable interest in negotiating a license, but beginning in December 2000, all of the parties abruptly began declining license offers and terminating business relations with Mopex.

Mopex alleges that it subsequently learned that defendant Barclays Global Investors, N.A. ("BGI") was communicating to other named defendants, among others,

that all exchanges and banks in the financial industry were to "maintain a united front" and "stick together" in refusing to do business with Mopex. Mopex also alleges that BGI was conspiring with other parties, including some of the named defendants, to infringe the '685 patent.

Count I of plaintiffs' complaint asserts patent infringement against all named defendants. Counts II, III, and IV allege civil conspiracy to commit patent infringement. Each of these conspiracy counts relates to three different products of the defendants: "iShares," "Select Sector Spiders," and "streetTRACKS." Count V alleges tortious interference with business expectancy against BGI, and Count VI alleges civil conspiracy to commit tortious interference against all named defendants.

## DISCUSSION

When ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and construes the allegations liberally and in the light most favorable to the plaintiff. *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). Defendants have moved to dismiss all of the state law claims for various reasons, and each claim is discussed in turn.

### I. Civil Conspiracy to Commit Patent Infringement

Counts II, III, and IV allege that defendants conspired to infringe the '685 patent. Defendants urge dismissal of these claims because a state law claim of civil conspiracy to commit patent infringement ("conspiracy to infringe") is preempted by the federal patent laws.

Under the Supremacy Clause, a state law that conflicts with federal law is preempted, meaning that the state law is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). An important guiding principle is that courts must presume that Congress does not "cavalierly" preempt state causes of action, because "the States are independent sovereigns in our federal system." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Another principal guiding preemption analysis is that "the purpose of Congress is the ultimate touchstone." *Id.* (internal quotations omitted).

There are three ways in which state law may be preempted by federal law. First, explicit preemption occurs when federal law expressly annuls the state law in question. *Jones v. Rath Packing Co.*, 430 U.S. 519, 530-31 (1977); *see Crosby Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Neither party cites a federal statute that expressly abrogates the claims considered here. Second, field preemption occurs when a scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Fed'l Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153 (1982). Third, conflict preemption occurs when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Defendants argue that both field and conflict preemption principles apply against state law conspiracy to infringe claims.

Whether a conspiracy to infringe claim is preempted by federal patent law is fully controlled by Federal Circuit precedent, which has not decided this issue. *See Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1360 (Fed. Cir. 1999). Many courts have considered or allowed such claims to pass without *sua sponte* raising preemption

4

concerns. *See, e.g., Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1247 (Fed. Cir. 2000); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 189 (D. Del. 1993); *Greenberg v. Croydon Plastics Co., Inc.*, 378 F. Supp. 806, 818 (E.D. Pa. 1974); *Waters v. Solarex Corp.*, No. 91 C 6120, 1992 WL 4454, at *4 (N.D. Ill. Jan. 7, 1992). The fact that a claim has passed before previous courts, however, is of little help in directly analyzing the issue of preemption. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1331 n.1 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1358-59 (Fed. Cir. 1999) (overruling *Hunter Douglas* with regard to choice of law in preemption analysis).

On the other hand, courts actually contemplating the preemption issue have ruled or stated in dicta that conspiracy to infringe claims are preempted by federal patent law. *See, e.g., Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 699 n.15 (E.D. Va. 2000) (suspecting in dicta that conspiracy to infringe claims are preempted); *Rainville Co., Inc. v. Consupak, Inc.*, 407 F. Supp. 221, 223 (D.N.J. 1976) (stating conspiracy as pleaded not separate ground for recovery); *see also Ernster v. Ralson Purina Co.*, Nos. 91-1270, 91-1271, 91-1281, 1992 U.S. App. LEXIS 26507, at *15 (Fed. Cir. Oct. 13, 1992) (unpublished case stating conspiracy to infringe claim preempted because it would constitute double-recovery). *But cf. Hunter Douglas*, 153 F.3d at 1337 (stating state law claim is not preempted merely because it involves substantial patent determination, and thus could not be brought in state court). None of these cases discussing the preemption issue, however, have closely considered the elements or the liability theory of the civil conspiracy cause of action.

5

Under Illinois law, a civil conspiracy must include (1) an agreement by two or more parties to do an unlawful purpose; and (2) at least one tortious act by one of the parties in furtherance of that agreement. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). While the agreement is an important element of civil conspiracy claim, "it does not assume the same importance as in a criminal action." *Id.*

In *Adcock v. Brakegate, Ltd.*, the Illinois Supreme Court held that an act satisfying the second element cannot be simply any act that furthers the conspiracy and causes injury to another. *Adcock*, 645 N.E.2d at 894. A plaintiff "must allege not only that one of the conspirators committed an overt act in furtherance of the conspiracy, *but also that such act was tortious or unlawful in character.*" *Id.* (emphasis added). This independently tortious act *in furtherance* of the agreement forms the basis of liability for all civil conspirators. *Id.* ("[T]he gist of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement."); *see also Weber v. Cueto*, 624 N.E.2d 442, 449 (Ill. App. Ct. 1993) ("[I]t is the act performed in pursuance of the agreement that may create liability.").

## A. Field Preemption

Defendants argue that any conspiracy to infringe claim must be field preempted under the patent laws. Although the Court ultimately agrees with defendants that plaintiffs' claim is conflict preempted, the Court is not convinced that all Illinois civil conspiracy claims, or even all claims that one may title "conspiracy to infringe," are subject to field preemption by the patent laws.

6

In *Hunter Douglas*, the Federal Circuit examined whether a state unfair competition claim relying on a substantial question of federal patent law is field preempted. The Federal Circuit vacated the district court's ruling that the claim was field preempted. In doing so, three points of analysis raised by the Federal Circuit are appropriate to this case. First, the Federal Circuit noted that the federal patent laws and state unfair competition law regulate conduct in different fields. *Hunter Douglas*, 153 F.3d at 1334. In short, the patent laws seek to reward and foster innovation, whereas unfair competition law regulates commercial business and contractual relations. *See id.* at 1333-35. Second, the fact that federal patent law and state unfair competition law have "long existed as distinct and independent bodies of law" strengthened the presumption against field preemption. *Id.* at 1334. Third, in part because the boundaries of the state common law definition of unfair competition are difficult to define, the Federal Circuit rejected the "blunt tool of field preemption" in favor of the more precise tool of conflict preemption, which examines the state law claim as applied. *Id.* at 1335-36.

The Court finds the *Hunter Douglas* analysis particularly appropriate here, and likewise rejects field preemption. Because a civil conspiracy claim by its nature must incorporate other torts as elements of the conspiracy, it is difficult to precisely determine the boundaries of civil conspiracy law without examining the other torts pleaded as part of any particular conspiracy claim. Civil conspiracy claims and the patent laws also have long co-existed, and abstractly the two bodies of law serve different purposes. The patent laws seek to foster and reward invention, by promoting disclosure of inventions and permitting the public to practice the invention once the patent expires. *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979). Stringent laws for patentability also ensure

7

that ideas in the public domain remain there for public use. *Id.* Civil conspiracy claims, on the other hand, are a method of aggravating liability for a tort committed. A civil conspiracy extends the circle of liability surrounding a tortious act, by holding liable all who implicitly encouraged that act as part of a larger illegal agreement or plan. *See, e.g., Adcock*, 645 N.E.2d at 894.

Thus some civil conspiracy claims have nothing at all to do with the patent laws, alleging torts entirely separate from patent infringement as both the object of the conspiracy, and the tortious act committed in furtherance of the conspiracy. These civil conspiracy claims are clearly not preempted by the patent laws, and none of defendants' field preemption arguments even attempts to reach this far.

Even some civil conspiracy claims may be given a title of "conspiracy to infringe," but in substance these claims may only implicate the patent laws to a remote extent, and base liability on a different tort. Infringing a patent is illegal, and parties agreeing to do so satisfy the first element of civil conspiracy, for an "unlawful agreement." Despite a title of "conspiracy to infringe" based on this purpose, in some claims the patent laws may play no further part in the conspiracy. Under *Adcock*, conspiracy liability would not be created merely by a mutual intention to infringe, even with some steps taken to advance that intention. Liability is created by, and damages flow from, an independently tortious act committed in furtherance of the conspiracy. *See id.*; *B.R. Paulsen & Co. v. Lee*, 237 N.E.2d 793, 796 (Ill. App. Ct. 1968) ("The charge of conspiracy is merely an aggravation of the alleged wrongful acts; it serves the purpose of associating all the defendants with the acts done . . . by any one of the defendants *in pursuance* of the conspiracy.") (emphasis added).

This tortious act in furtherance of the conspiracy to infringe may have nothing to do with patent infringement. For example, if two parties agree to infringe a patent, and one party steals material in preparation to infringe, an actionable conspiracy that some may title a "conspiracy to infringe" has occurred. But in this circumstance, the conspiracy liability and damages are not based on any eventual patent infringement, but rather are based on the theft committed. All parties are now liable *for the theft* because it was part of a larger illegal purpose and common scheme. It matters little that the larger illegal purpose of the theft was eventual patent infringement or any other illegal purpose, as long as the conspirators' common design was *illegal*.[1]

It is doubtful that the patent laws were meant to preempt how states extend liability for other torts, merely because a group's illegal purpose was patent infringement, versus any other illegal purpose. Thus it is difficult to argue conceptually that the patent laws occupy the entire of field of claims that a plaintiff may title "conspiracy to infringe," when many of these claims could have liability theories based on torts entirely separate from those governed by the patent laws.

---

[1] Put abstractly, two or more parties may agree to commit tort X. While progressing to eventually commit tort X, one party commits tort Y. The civil conspiracy claim allows a plaintiff to recover against all conspiring parties for tort Y, rather than only against the party that actually committed tort Y. For liability, the nature of tort X is unimportant, as long as it shows that tort Y was committed as part of a larger illegal purpose. This is different than in criminal liability, where the actual object of the illegal agreement plays a larger role and may alter culpability, e.g., a conspiracy to commit murder is worse than a conspiracy to commit petty theft. Also note that X and Y need not always be different *types* of torts, as long as Y is independently a tort. For example, two parties conspire to rob plaintiff of $100. Each party separately tries, and is successful in walking away with only $20 each. Both an unlawful agreement (to steal $100), and an independent tort in furtherance of the agreement (stealing $20) has been committed by each of the parties. Each party is now liable for their own tort, plus the tort of the co-conspirator. Plaintiff can collect the $40 stolen, payable from either conspirator. For civil conspiracy, this $40 liability for the tort(s) actually committed is not altered if the common scheme were to steal $1000 instead of $100, or even to buy equipment to later infringe plaintiffs' patent. The tort actually committed in pursuance of the common scheme is the key to liability, not the tort representing the common scheme.

9

Civil conspiracy claims and the patent laws serve conceptually different purposes, and are longstanding independent bodies of law. Additionally, because the field of civil conspiracy is abstractly difficult to define, and may sometimes implicate patent law only remotely or not at all, the Court rejects the notion that conspiracy to infringe claims are field preempted by federal patent law. Defendants' preemption arguments, while ultimately prevailing, are only conceptually directed at the particular claim advanced by the plaintiffs, rather than the entire field of civil conspiracy law, or even an easily definable subsection of that field. Conflict preemption analysis is more appropriate in this case.

## B. Conflict Preemption

Even though conspiracy to infringe claims may not be field preempted, the Court must also examine whether the plaintiffs claim as applied would frustrate the objectives of Congress. *Hunter Douglas*, 153 F.3d at 1335.

Plaintiffs plead that defendants "knowingly and voluntarily agreed to, and participated in, a common scheme or contract to unlawfully and otherwise improperly render plaintiff's rights valueless and/or appropriate such rights by collectively and/or jointly infringing the '685 patent." Stripped of its verbosity and sorted into the two required elements, this claim essentially alleges that defendants: (1) agreed to the unlawful purpose of infringing the '685 patent; and (2) furthered this purpose by jointly infringing the '685 patent.

The Court agrees with defendants that the state claim as pleaded is duplicative with federal patent law. If plaintiffs can show that one or more of the defendants were

direct infringers, then allowing this state claim would mean that plaintiffs could recover: 1) on the federal infringement claim against the direct infringer(s), and possibly other parties for inducing infringement; and 2) on the state conspiracy claim against the direct infringer(s), and other agreeing parties. The state claim would be duplicative at the least in relation to the direct infringers, and possibly in relation to all defendants.

This claim could not survive through final judgment and provide damages separate from infringement. If Congress had intended for patent owners to receive twice the amount of infringement damages sustained, it would have stated so. Plaintiffs also cannot use the possible existence of a conspiracy as a reason for extra damages, because the federal patent laws already provide extra damages for willful infringement under 35 U.S.C. § 284. Thus the idea that a conspiracy to infringe is somehow more insidious than simple infringement is already captured by the trebled damages for willfulness available under the federal statute. Facially, plaintiff's conspiracy claim must be preempted because it is symmetrical with infringement and alleges nothing in addition to that required by the patent laws. *See Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1306 (Fed. Cir. 1999) (stating that state law claims must entail elements in addition to the patent laws to avoid preemption).

Plaintiffs dispute this characterization and assert two arguments as to why this claim is different from a federal patent infringement claim. Even if these arguments were to show that plaintiffs' claim is not perfectly symmetrical with federal patent law, they would still not be sufficient to make the claim an alternative liability theory that can survive preemption and the instant Rule 12(b)(6) motion.

First, plaintiffs argue that the state conspiracy claim requires an "agreement" element, which is in addition to what is required by patent law. However, it is difficult to see how plaintiffs' claim as pleaded is different from bringing a claim of direct infringement against some parties and a claim of inducement under 35 U.S.C. § 271(b) against others.

Inducement requires proof that the accused infringer "knowingly aided and abetted another's direct infringement of the patent." *Rodime*, 174 F.3d at 1306. If a party must knowingly aid and abet another party's direct infringement for inducement under § 271(b), certainly it can be said that this party already "agreed" to the other party's acts constituting direct infringement. Precisely determining whether the quantum of proof for a conspiratorial "agreement" to infringe is different than the intent for inducing infringement under § 271(b) is not necessary, because federal law, and not state law, is meant to govern how much activity constitutes sufficiently aiding a direct infringer so as to incur liability for that infringement. In the claim as pleaded, the state civil conspiracy claim would be serving the same purpose as the inducement provisions of § 271, by extending liability to parties who might not have been direct infringers, but who may have played a role in a direct infringement.

The result is either liability that exactly duplicates federal law, or liability that draws a different line as to how much activity constitutes aiding an infringer so as to incur liability along with that infringer. Such a result stands in conflict with congressional intent for federal patent law to draw the liability line and stipulate the amount of damages for such liability. *Hunter Douglas*, 153 F.3d at 1335 ("If a plaintiff bases its tort action on conduct that is protected or governed by federal patent law, then

the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law.").

Plaintiffs' second, and more novel, argument involves a theory of defendants' "collective and/or joint infringement" of the '685 patent. The precise implications of this collective infringement idea are not entirely clear from the complaint itself or from plaintiffs' brief. Plaintiffs argue that the state conspiracy claim would protect patentees from the concerted efforts of copyists. Thus a "collective infringement" claim might suggest that defendants' *aggregate activity* resulted in an overall direct infringement, even if none of them *individually* performed all claim limitations required for direct infringement. Plaintiffs' argument is that if no federal liability exists in this circumstance, then the civil conspiracy claim would offer protection against this aggregated or collective infringement.

Regardless of whether this circumstance could create federal liability under 35 U.S.C. § 271, an issue which is not currently before the Court, a state civil conspiracy claim fashioned on a "collective infringement" theory cannot stand. As a threshold matter, if none of the individual defendants directly infringed, then none of them *individually* committed a *tortious* act in furtherance of the conspiracy. Because an entity performing some but not all limitations of a patent claim is not a literal infringer, *see Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002), and thus is not a tortfeasor, no defendant individually committed a tort in furtherance of the conspiracy satisfying the second element of *Adcock*. Regardless of preemption, even under Illinois law, plaintiffs would have no claim. For civil conspiracy, a subset of defendants must have committed a clear tort, for which the whole group can be held

liable because of the group's larger illegal plan. Plaintiffs attempt to transform this basic premise of civil conspiracy into a completely different type of claim: that aggregating a number of individual, non-tortious non-infringing acts constitutes a tortious infringement.

Whether such a legal transformation is possible or desirable, it needs to occur within a federal patent infringement claim, rather than within a state law claim. Federal law, and not state law, determines the umbrella of circumstances that are substantively considered patent infringement. *See 3D Sys., Inc. v. Aarotech Labs, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) ("Defining the contours of the tort of infringement, which exists solely by virtue of federal statute, entails the construction of the federal statute and not a state's common or statutory law."). If there is no federal liability for the type of concerted activity that plaintiffs claim, the state civil conspiracy claim cannot extend the boundaries of patent infringement liability beyond the contours created and shaped entirely by federal law. Just as important as the activities incurring liability under 35 U.S.C. § 271 are the activities that do not incur liability. It is not for state law to alter this balance. State claims cannot simply duplicate federal infringement claims and provide extra damages. Nor can they provide a basis for an alternative theory of liability that thwarts the line drawn by federal law with respect to circumstances that fall inside or outside of the scope of 35 U.S.C. § 271.[2]

---

[2] The Court recognizes that some of the analysis of patent law "governing" plaintiffs claim may sound more like field preemption rather than conflict preemption. Field and conflict preemption are not always conceptually distinct. *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990). What complicates the labeling here is the fact that a civil conspiracy claim does not exist without other torts. Thus it is hard to define what exactly the "field" of civil conspiracy law is, much less determine whether Congress intended to entirely occupy it with the federal patent laws. However, plaintiffs' claim *as constructed* falls entirely within the gambit of federal patent law, and allowing it would frustrate congressional intent to define exclusively the contours of infringement liability. This focus on the claim as applied seems to be more aptly labeled conflict rather than field preemption.

The Court holds that an Illinois civil conspiracy claim: 1) based upon patent infringement liability; and 2) implicating no other tort outside of infringement under either element of the conspiracy, is preempted by conflict with the patent laws. Counts II, III, and IV are dismissed. Defendants' alternative arguments that these counts do not allege sufficient details about the conspiracy agreement are moot.

**II. Tortious Interference**

Count V is only directed toward defendant BGI. Plaintiffs allege that BGI tortiously interfered with Mopex's expected business relationships with six "third parties" in violation of Illinois law. BGI moves to dismiss the claim, arguing that Mopex's complaint fails to state a claim because Mopex fails to allege an act of direct interference towards any of the six third parties named in its Second Amended Complaint.

To state a valid claim of tortious interference with economic advantage under Illinois law, a plaintiff must allege: (1) a reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) that the defendant purposefully interfered with the expectancy; and (4) damages suffered by the plaintiff as a result of such interference. *Crinkley v. Dow Jones & Co.*, 385 N.E.2d 714, 720 (Ill. App. Ct. 1978). The tort requires that "the defendant have taken some action toward a third party which caused the third party not to do business with the plaintiff." *Automated Concepts, Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at *7 (N.D. Ill. Aug. 9, 2000).

Plaintiffs adequately plead interference directed at third parties in Paragraph 117(d) of its Second Amended Complaint when it alleges that "no one in the financial

industry was to do any business with plaintiffs *per BGI's request.*" (emphasis added). Thus Mopex has alleged that BGI specifically took an action toward third parties: it urged that members of the financial industry, of which the six third parties are clearly included, not do business with plaintiffs. The fact that plaintiffs allege "members of the financial industry" in Paragraph 117(d) rather than listing out the parties as in Paragraph 119 is also of no consequence, for even action directed at a class of third parties would be sufficiently well-pleaded. *See Cook v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998).

Defendants do not raise any other deficiencies about the claim other than the claim did not allege an "action" towards third parties. Because plaintiffs may be able to prove a set of facts about BGI's action, including that this request was improper in some way, *see Dowd & Dowd, Ltd. v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998), the claim must survive dismissal. *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992) (claims must survive dismissal if "relief could be granted under any set of facts that could be proved consistent with the allegations"). BGI's motion to dismiss Count V is denied.

### III. Civil Conspiracy to Commit Tortious Interference

Defendants argue that Count VI (civil conspiracy to commit tortious interference) must be dismissed because one of the underlying elements of the claim is Count V, tortious interference, and that count did not properly plead tortious conduct. *See, e.g., Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 794 (N.D. Ill. 1997). Because the Court finds Count V properly states a claim for relief, the Court denies the motion based on this ground.

16

Additionally, defendants cite *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999), in support of a one-sentence argument that plaintiffs have not sufficiently pleaded facts surrounding the conspiracy agreement. Unlike in *Ryan*, however, where there was simply a "bare allegation" of conspiracy, *see id.*, plaintiffs have pleaded a set of facts sufficient to put defendants on notice of the allegation and prepare a defense. Plaintiffs allege that they were negotiating licenses with various defendants, and abruptly all of these discussions ended in December 2000. Plaintiffs further allege that they later learned that this was instigated by BGI, who told the other defendants to maintain a united front against any business with plaintiffs. Thus plaintiffs have alleged circumstances that infer approximately when the agreement was formed, who was largely a part of it, and even which party instigated the agreement.

Conspiracies are by their nature often "shrouded in mystery," and as such they "do not permit the plaintiff to allege, with complete particularity, all of the details of the conspiracy or the exact role of the defendants in the conspiracy." *Adcock*, 645 N.E.2d at 895. The Court believes that plaintiffs have pleaded sufficient circumstantial facts such that "commonsense knowledge of the behavior of persons in similar circumstances" warrants a reasonable inference that plaintiffs were the subject of a conspiracy agreement. *Id.* Defendants' motion to dismiss Count VI is denied.

**IV. Defendants' Motion to Bifurcate and Stay Surviving Claims**

Defendants argue that, should Counts II-VI survive its motion to dismiss, they should be bifurcated and stayed pending the outcome of the patent infringement litigation. Plaintiffs oppose bifurcation. Because the Court holds that Counts II, III, and IV are dismissed, it only examines defendants' arguments for bifurcation as to Counts V and VI.

The decision to bifurcate is within the sound discretion of the Court according to the criteria set forth in Rule 42(b). FED. R. CIV. P. 42(b); *see also Baxter Int'l, Inc. v. Cobe Lab., Inc.*, No. 89 C 9460, 1992 WL 77665, at *1 (N.D. Ill. Apr. 7, 1992).

Defendants argue that Count VI should be bifurcated because "evidence of an accused's intent to infringe will improperly influence a juror's deliberation as to whether the accused did not in fact infringe." While this argument may well have applied to the dismissed conspiracy to infringe claims, it does not necessarily apply to Count VI. Count VI alleges that defendants conspired tortiously not to do business with plaintiffs. The fact that defendants may have wanted to avoid business with Mopex does not automatically insinuate that defendants intended to infringe the '685 patent. Indeed, it might insinuate the opposite - that defendants declined to do business with the Mopex because they intended to pursue other non-infringing alternatives outside of the realm of intellectual property own by Mopex. Thus allowing Count VI to be tried with patent infringement does not prejudice defendants with respect to willfulness.

Although Count V, tortious interference, is directed at only one of the parties, Count VI, the remaining conspiracy count, overlaps with Count V and involves all of the defendants. Defendants have not sufficiently raised any other arguments that would warrant bifurcating these remaining claims in light of the increased delay, expense, and inconvenience. Unlike the dismissed conspiracy to infringe claims, the two surviving

claims will have to be adjudicated regardless of whether patent infringement is proven. The Court decides to try these issues together.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part defendants' motion to dismiss [168-1] and denies defendants' motion to bifurcate and stay the remaining claims [168-2]. The Court: (1) grants defendants' motion to dismiss Counts II, III, and IV; (2) denies BGI's motion to dismiss Count V; and (3) denies defendants' motion to dismiss Count VI.

**SO ORDERED**                    ENTERED: 2/25/03

_____
HON. RONALD A. GUZMAN
United States Judge